## No. 3032
## Second Circuit

———

## FLETCHER v. NUGENT & McLAUGHLIN

———

(February 3, 1928. Opinion and Decree.)

*(Syllabus by the Court)*

1. Louisiana Digest—Evidence—Par. 343, 352; Timber—Par. 10.
   In a suit for the value of standing timber cut and removed under contract, the unimpeached testimony of a competent scaler who counted and scaled all logs taken, is entitled to greater weight as to the number and contents of such logs than estimates by other witnesses arrived at by counting the stumps of the trees and measuring their diameter and the distance between them and the tree-tops on the ground four months after the cutting and removal. The word "estimate" implies inaccuracy and means to calculate "roughly" or form an opinion from imperfect data. Bautovich vs. Great Southern Lumber Co., 129 La. 857, 56 So. 1026.
   (Editor's note: Refer to Louisiana Digest, Obligations, Par. 101.)

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Grant. Hon. R. C. Culpepper, Judge.

Action by George Nelson Fletcher against Nugent & McLaughlin.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

Joel L. Fletcher, attorney for plaintiff, appellant.

C. H. McCain, of Colfax, attorney for defendants, appellees.

## STATEMENT OF THE CASE

REYNOLDS, J. This is a suit to recover $157.05 as the value of 52,150 feet, board measure, of timber alleged to have been cut and removed by defendant from plaintiff's land under contract. Defendant denied liability and alleged that it had paid for all timber taken by it.

On these issues the case was tried and there was judgment rejecting plaintiff's demands and he has appealed.

## OPINION

Defendant cut and removed certain timber from plaintiff's land under a contract reading, in part, as follows:

"This sale is made for and in consideration of two hundred and eighty dollars cash

in hand paid and for three dollars per thousand for all such timber as is in excess of one hundred thousand feet to be paid for when cut after said one hundred thousand feet is cut."

Defendants had the logs counted and scaled as they were loaded on their skidway and found they contained 115,437 feet, board measure, and accordingly paid plaintiff for the excess of 15,437 over the 100,000 at the stipulated price of $3.00 per thousand.

Plaintiff contends that defendants really cut and removed 167,787 feet of timber from his land.

Four months after defendants had rendered plaintiff a statement of the amount of timber cut by them from his land and mailed him a check for $46.31 in payment of the excess of 15,437 feet over the 100,000, plaintiff had an estimate made for him by Jim Butts, Marshall Walker, W. D. Gardner and Doc Chandler, of the timber taken by defendants from his land.

As to this estimate, these witnesses testified as follows:

Jim Butts:

"Q. Now how did he (Marshall Walker) measure the stumps, were you present?
"A. He measured with a stick.
"Q. Is this the stick?
"A. No, sir. It was a square stick.
"Q. What did he measure with? He did the measuring. What else?
"A. Well, I stepped it off; just stepped it; that's all.
"Q. Just stepped the lengths of the trees?
"A. Yes, where I could; and where I couldn't, we just took an estimation of it.

* * * *

"Q. In instances where you couldn't exactly determine the original location of the old tops, what did you do in those cases?
"A. We estimated according to what the other trees of the same size stump.

* * * *

"Q. Mr. Butts, do you want to say—you don't mean to tell the court that you know how much timber was cut by McLaughlin & Nugent?
"A. No.
"Q. You don't know if it is 100,000 ——
"A. (Interrupting.) No, no, I don't know if it's 100,000 or 1,000,000."

Marshall Walker:

"Q. What did you do on that day?
"A. Well, Mr. Fletcher wanted us to count the stumps and tops and measure them and guess at the length like.

* * * *

"Q. Well, what—did you do that as accurately as you could under the circumstances?
"A. Well, we couldn't get to them in places.
"Q. Well, you are a practical man, in cases where there was doubt—what did you do where you tried to scale this, what did you do in difficult places? Where you couldn't tell did you make it exceedingly large or what did you do?
"A. Well, if I couldn't measure I just guessed and went on.
"Q. Were you guessing conscientiously?
"A. I think so.

* * * *

"Q. In this measurement, you estimated the timber inside the lines that you understood to be on the place?
"A. There was a few that was too old for the cut, and I thought they was, but they seemed to think they wasn't.

* * * *

"Q. Now you say that a good many of them looked too old? (Treetops.)
"A. Well, there was a big strip there that I thought looked too old, but the rest didn't think so.
"Q. A good big strip?
"A. About half an acre.

* * * *

"Q. (Interrupting) I am not talking about Chandler.
"A. I don't pretend to know anything about it; I went in there to measure the stumps.

* * * *

"Q. Did you measure all the tops?
"A. No.

"Q. I believe you told Mr. Fletcher that you guessed at the tops?

"A. Large majority. We would guess a while and measure a while.

* * * *

"Q. What did you mean when you said you guessed at a large majority?

"A. Well, I didn't—couldn't swear to the tops but I could to the butts.

"Q. Then the point I am getting at is, when you say that you guessed at a large majority of the tops, did you mean Mr. Chandler guessed?

"A. Well, Mr. Chandler guessed sometimes.

"Q. Did Mr. Butts guess?

"A. We all guessed.

* * * *

"Q. As to the tops, you every one guessed?

"A. We would have to guess at all, if we guessed at one.

* * * *

"Q. Then I am going to ask you the question, and ask for a yes or no answer. The way you all measured and guessed and guessed and measured, could you testify to any accuracy as to the number of feet that was cut by Nugent & McLaughlin?

"A. Well, we did not go down to get—down we went over there—I couldn't do it for I don't know what was in a tree.

"Q. Your answer is no.

"A. Yes."

W. D. Gardner:

"Q. Did you measure the tops, Mr. Gardner?

"A. Yes.

"Q. Measured all the tops?

"A. No, there was a few tops that was scattered around, I eventually found all of them, the way I would do that I would take a tree of the same diameter in the stump and average, and I always give the doubt. I said I would take a tree of the diameter in the stump where I failed to find the top."

* * * *

Doc Chandler:

"Q. You heard these other boys testify?

"A. Yes; I put down the measurements as they gave them to me.

* * * *

"Q. As they measured, you put it down?

"A. I didn't see each stump; I didn't see the measurements as they were made; they called it off to me and the amount.

* * * *

"Q. Does your record show the size of the stumps?

"A. Size of the stump, top and length as we measured it. We had no real measure. Mr. Walker stepped it.

* * * *

"Q. You don't pretend to say that you know how much timber was cut off this land by Nugent & McLaughlin?

"A. Not in feet, no.

"Q. Now, Mr. Butts, when he was on the stand, testified that the biggest majority of the tops you all guessed at?

"A. Mr. Walker, you mean.

"Q. Mr. Butts did too.

"A. Well, the majority of them, no.

"Q. Now Mr. Walker also testified that a big majority was guessed at?

"A. Well, we guessed at some of them, but not a majority. I say "we"—they did. I was there and they had the measure. I wasn't pretending to measure. It would come up like this, may be. The top was away in a briar patch or some more tops on top of it and we couldn't get to it very easy; we would look in there and guess at what the top might be—ten, twelve or fourteen—as the case might be, but we didn't do the majority that way.

* * * *

"Q. Well, now, when you testify that they guessed at a majority of those tops, you put down what they guessed at?

"A. Yes; if they said ten inches, I put down ten inches.

"Q. Well, you can't of your own knowledge testify as to any of these measurements being correct?

"A. I can only testify to what they told me."

Estimates of the amount of timber cut and removed by defendants from plaintiff's land, arrived at in the manner testified to by these witnesses, is not, in our opinion, sufficient to overcome the calculation of such timber based upon the count and measurements of the logs made

by Mr. Monroe Nugent as they were hauled to the sawmill.

Our learned brother of the District Court, who heard the witnesses and observed their demeanor on the witness stand, accepted Mr. Monroe Nugent's testimony as true, and so do we.

Plaintiff insists that defendants should have called as witnesses in their behalf Claude Guilliams and Johnnie Corley who hauled the logs for them from the woods to the mill. The burden was on plaintiff to make out his case, and if the testimony of these persons as witnesses was necessary to that end he should have had them summoned.

Defendants kept an actual count and scale of the logs taken from plaintiff's land and could well afford to rely on that evidence.

Under the law and the evidence the judgment appealed from is correct and it is therefore affirmed.